IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

STEPHEN LEWIS                                                              PLAINTIFF

V.                                                               NO. 4:25-CV-109-DMB-JMV

INVESTIGATOR CORY
WEATHERSPOON in his
individual and official capacity                                          DEFENDANT

## OPINION AND ORDER

Stephen Lewis seeks a default judgment on his § 1983 claims against Cory Weatherspoon alleging false arrest, illegal search and seizure of his vehicle and cell phone, malicious prosecution, and deprivation of property. Because there is not a sufficient basis in the pleadings for any claims except the illegal search of Lewis' vehicle and cell phone, because Lewis is not entitled to injunctive or declaratory relief, and because Lewis did not submit anything to support his claimed damages, the motion for default judgment will be granted in part and denied in part.

## I
## Procedural History

On July 14, 2025, Stephen Lewis filed a pro se complaint against Investigator Cory Weatherspoon in his individual and official capacity asserting 42 U.S.C. § 1983 claims for "deprivation of property without due process; illegal search and seizure of vehicle; illegal search and seizure of cell phone and its digital contents; false arrest and/or reckless and malicious prosecution in violation of the Fourth and Fourteenth Amendments." Doc. #1 at 1–2. Based on these claims, Lewis seeks twenty million dollars in compensatory damages, another twenty million dollars in punitive damages, and injunctive and/or declaratory relief. Id. at 39–40. Weatherspoon was personally served the summons and complaint on July 16, 2025. Doc. #5 at 2.

On August 11, Lewis moved for an entry of default against Weatherspoon based on Weatherspoon's failure to answer or otherwise defend. Doc. #6. The Clerk of the Court entered a default against Weatherspoon three days later. Doc. #7. On August 26, Lewis filed a motion for default judgment against Weatherspoon. Doc. #10. Weatherspoon did not respond to the motion, and has never appeared in this case.

## II
## Rule 55

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a default may be entered "against a party when it has failed to plead or otherwise defend itself." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the court clerk; and (3) a default judgment granted by the court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.") (emphasis omitted). In determining whether to grant a default judgment, the Court considers (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods.*, *Inc. v. Morelia Mexican Rest.*, *Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

## III
## Relevant Factual Allegations

On November 13, 2020, Melissa Jenkins called the Washington County Sheriff's Department and reported seeing a vehicle she identified as being involved in the burglary of her vehicle several days earlier. Doc. #1 at 5. The Sheriff's Department informed Investigator Cory Weatherspoon, who called Jenkins, and Jenkins identified the vehicle as a Blue Nissan Rogue

2

bearing Georgia tag CLN1312. *Id.* Weatherspoon was not informed of the license plate number of the vehicle or given a description of the suspect involved in the burglary prior to the call with Jenkins. *Id.* Weatherspoon responded to the scene, observed the Blue Nissan Rogue bearing Georgia tag CLN1312, and pulled the vehicle over without witnessing Stephen Lewis, the driver of the vehicle, committing any traffic violation or other crime. *Id.* at 6. After Weatherspoon informed Lewis of the reason for the traffic stop, Lewis ran from the vehicle into a field. *Id.* at 6–7. Weatherspoon chased him, knocked him to the ground, handcuffed him, and placed him in the sheriff deputy vehicle, but did not arrest him. *Id.* at 7.

Weatherspoon and two other deputies then searched Lewis' vehicle, finding $2,000.00 in the glove compartment and items belonging to William McNemar.[1] *Id.* at 7–8. Weatherspoon asked Washington County Sheriff's Department Chief Billy Barber if he should tow the vehicle and indicated he planned to charge Lewis with failure to comply. *Id.* at 8. Barber decided not to tow and impound Lewis's vehicle. *Id.*

Weatherspoon then seized Lewis' car keys and cell phone. *Id.* Weatherspoon asked Lewis, "Do you mind if I go through your phone?" and Lewis responded, "Yeah go head," but Weatherspoon did not look through the phone at that time. *Id.* at 8–9. Weatherspoon gave the keys to one of the deputies to drive Lewis's vehicle to the station. *Id.* at 9. Lewis was transported to the sheriff's department, where he called Weatherspoon "a bitch, a crooked ass officer and a piece of shit." *Id.* Weatherspoon placed Lewis under arrest and charged him with two counts of auto burglary and one count of credit card fraud. *Id.*

The next day, Weatherspoon filled out a vehicle inventory form in which he falsely stated that the evidence from Lewis' vehicle was found during an inventory search. *Id.* at 10–11.

---

[1] According to Weatherspoon's case report, McNemar reported that his vehicle had "just been burglarized." Doc. #1-2 at 6.

Weatherspoon omitted from his report that Lewis' vehicle was never impounded or towed. *Id.* at 11. Weatherspoon's motive for charging Lewis and including the false statements in his inventory form and report was retaliation for Lewis insulting him. *Id.* On November 18, Weatherspoon searched the contents of Lewis' cell phone. *Id.* at 14. A search warrant was not issued for the cell phone until five days later. *Id.*

Lewis was in jail for ten days, during which he suffered mental anguish, anxiety, and severe depression. *Id.* at 12. Weatherspoon included the evidence obtained from the search of Lewis' vehicle in three probable cause affidavits. *Id.* Said affidavits were presented to the grand jury that indicted Lewis in April 2021. *Id.* at 15. A suppression hearing was scheduled for the week of October 17, 2022, but on October 11, Assistant District Attorney Austin Frye filed a motion to dismiss all charges against Lewis, and the charges were dismissed the same day. *Id.* at 20.

**IV**
**<u>Analysis</u>**

In determining whether to grant a default judgment, the Court considers (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

**A. Procedurally Warranted**

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obligated to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp 3d 748, 753 (N.D. Tex 2020) ("[B]ecause [defendant] has not filed any responsive pleading, there are no materials facts in dispute."). Second, Weatherspoon's failure to respond causes prejudice to Lewis because it "threatens to bring the adversary process to a halt." *Id*. Third, as mentioned above, the grounds for default (default by Weatherspoon and entry of default by the clerk of court) have been clearly established. Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Weatherspoon has not attempted to set aside the default since it was entered approximately five months ago. *See Helena Chem. Co v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss Apr. 21, 2016) ("[W]hile default judgment is a harsh remedy, any harness is mitigated where, as here, the defendant has had substantial time to correct the default."). Finally, if Weatherspoon later seeks to challenge the default, the Court is unaware of any facts that would obligate it to set aside the default. *Lindsey*, 161 F.3d at 893. For these reasons, a default judgment is procedurally warranted here.

### B. Sufficient Basis in the Pleadings

"Even when a defendant is in default, a plaintiff is not 'entitled to default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th. Cir. 2022) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). "[A] court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Id*. at 493. The complaint's factual allegations must "be enough to raise a right to relief above the speculative level." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "[T]he district court takes as true the facts asserted by a plaintiff against a defaulting defendant" because "'[t]he defendant, by

his default, admits the plaintiff's wellpleaded allegations of fact.'" *Escalante*, 34 F.4th at 492 (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

### 1. Official capacity claims

"A claim against government officials in their official capacity is a de facto suit against the local government entity of which the officials act as agents." *Guillot ex rel. T.A.G. v. Russell*, 59 F. 4th 743, 751 (5th Cir. 2023) (citing *Burge v. Parish of St. Tammany*, 187 F. 3d 452, 466 (5th Cir. 1999), and *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). So, the Court will treat the claims against Weatherspoon in his official capacity as claims against the Washington County Sheriff's Department.

"Three essential elements must be established for a municipality to face § 1983 liability. There must be: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (quoting *Piotrowski v. City of Hou.*, 237 F.3d 567, 578 (5th Cir. 2001)). "An official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id*. (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)).

Lewis alleges that "[p]rior to November 13, 2020, [the] Washington County Sheriff permitted, tolerated, and ratified an official pattern, custom, and practice by its officers of omitting material facts from its reports, falsifying documents, including false information in affidavits of probable cause, permitting its deputies to drive suspects vehicles, [and] conduct[ing] warrantless searches on vehicles." Doc. #1 at 23. These allegations are conclusory and unsupported by facts. Lewis does not allege any instances of the conduct complained of beyond Weatherspoon's actions

6

related to Lewis' criminal case. And Lewis points to no policy statement, ordinance, or regulation that would show such an official policy. Because Lewis fails to allege an official policy, his complaint fails to state a § 1983 claim against the Washington County Sheriff's Department.

More, Weatherspoon does not appear to be a proper defendant for an official capacity claim, because Lewis does not allege he is the policymaker for the Washington County Sheriff's Department. *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) ("Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit.") (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

### 2. Individual capacity § 1983 claims

The elements of a § 1983 claim are "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 503 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004)). While Lewis clearly alleges the second and third elements, the Court must determine whether in each instance Lewis alleges a deprivation of a right secured by federal law.

### *a. False Arrest*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "A false arrest occurs, and an individual's Fourth Amendment rights are violated, when an officer conducts an arrest without probable cause." *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023). Lewis alleges that Weatherspoon arrested him without a warrant on November 13 and, several days later, deliberately included false statements in three probable cause affidavits which

were submitted to the judge who found probable cause for his arrest. Doc. #1 at 25, 27–28.

"A warrantless arrest is reasonable if the officer has probable cause to believe that a criminal offense has been committed." *Loftin v. City of Prentiss*, 33 F. 4th 774, 780 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Santander v. Salazar*, 133 F.4th 471, 481 (5th Cir. 2025) (internal quotation marks omitted) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Loftin*, 33 F. 4th at 780 (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983)). "An arrest is lawful if the officer had probable cause to arrest for *any offense*, not just the offense cited at the time of arrest or booking." *Santander*, 133 F.4th at 481 (emphasis in original) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 54 n. 2 (2018)).

According to the complaint, prior to the arrest, Weatherspoon found multiple items of property, including a wallet and credit cards, belonging to a person who had just reported their vehicle burglarized, as well as shattered tinted glass, in Lewis' vehicle. Doc. #1 at 12. Lewis does not dispute that such items were in his vehicle. Based on this evidence, along with Jenkins' identification, it was clearly reasonable for Weatherspoon to conclude that Lewis had committed auto burglary. And whether the evidence was obtained illegally does not affect the probable cause analysis in a § 1983 false arrest claim. *See Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (evidence found during illegal search considered in determining probable cause in § 1983 case because exclusionary rule does not apply in civil proceedings). Because based on the complaint's

8

allegations there was probable cause for Lewis' arrest, there is not a basis in the pleadings for his false arrest claim.[2]

### b. Illegal Search and Seizure of Vehicle

As explained above, the Fourth Amendment protects the right against unreasonable searches and seizures. "Warrantless searches and seizures are per se unreasonable subject to certain narrow exceptions." *United States v. Alvarez*, 40 F.4th 339, 345 (5th Cir. 2022) (citing *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020)). Lewis claims that his Fourth Amendment rights were violated when Weatherspoon initially stopped his vehicle, when Weatherspoon searched the vehicle, and when a deputy, pursuant to Weatherspoon's instruction, drove the vehicle to the police station. Doc. #1 at 29–31.

### i. Investigative stop

Lewis challenges the investigative stop as being unsupported by reasonable suspicion. Doc. #1 at 29–30. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity … occurred, or is about to occur, before stopping the vehicle." *United States v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). Reasonable suspicion "requires the police officer to point to specific and

---

[2] Lewis also challenges the inclusion of false statements in the affidavits supporting his arrest warrant. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Deville*, 567 F.3d at 170). "The initiating party may be liable for false arrest, however, if the plaintiff shows that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* (internal quotation marks omitted). "Officers are liable for their false statements only if those statements were 'necessary to the finding of probable cause.'" *Hughes v. Garcia*, 100 F.4th 611, 623 (5th Cir. 2024) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). Here, because there was probable cause for his arrest, Lewis does not have a claim for false arrest regardless of any false statements in the warrant affidavits. And, even if there was not probable cause, the statement about how the evidence was obtained cannot be considered "necessary to the finding of probable cause," because again, the legality of a search is not considered in determining whether probable cause existed in § 1983 cases.

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013) (cleaned up) (quoting *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009)).

Here, Lewis alleges that Jenkins identified his car as the car driven by the perpetrator of the burglary of her vehicle, and that Jenkins provided a detailed description of his car, including the make, model, color, and license plate number. Given these allegations, Weatherspoon had reasonable suspicion to believe that Lewis committed the burglary of Jenkins' vehicle. *See United States v. Brown*, 558 F. App'x 386, 392 (5th Cir. 2014) (reasonable suspicion when victim identified vehicle as "looking just like" vehicle involved in the crime and vehicle "matched the make, model, and color of the vehicle described by" the victim).

### ii. Search of vehicle

"A warrantless search is presumptively unreasonable unless the circumstances fall under an exception to the Fourth Amendment's warrant requirement." *United States v. Riojas*, 139 F.4th 465, 474 (5th Cir. 2025) (internal quotation marks omitted) (quoting *United States v. Clayton*, 98 F.4th 256, 261 (5th Cir. 2024)). Lewis alleges that Weatherspoon characterized the search of his vehicle as an inventory search. "An inventory search is an exception to the Fourth Amendment's warrant requirement." *United States v. Villarreal*, 161 F.4th 364, 368 (5th Cir. 2025) (citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). Inventory searches are reasonable if "conducted pursuant to standardized regulations and procedures." *Villareal*, 161 F.4th at 368 (quoting *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012)).

10

Based on the complaint's allegations, the vehicle was not impounded at the time of the search. Lewis alleges that *after* conducting the search, Weatherspoon asked Barber what he should do with the vehicle, and Barber decided the vehicle would not be towed and impounded but that he might have one of the deputies drive it to the station. Doc. #1 at 8. So, at the time of the search, Weatherspoon had not yet impounded the vehicle or even decided whether to impound the vehicle. None of the permissible reasons for an inventory search apply here—there was no reason to believe the vehicle or anything in it was dangerous, and there was no need, prior to impounding the vehicle, to secure items in the vehicle or protect against claims of loss or damage. More, it is not clear that the search was conducted pursuant to standardized procedures for inventory searches.

It is also not apparent from the complaint that Weatherspoon had any other lawful basis to search the vehicle. The search was not a lawful search incident to arrest because Lewis alleges he was not arrested prior to the search. And the automobile exception to the warrant requirement does not apply on the face of the complaint either. The automobile "exception permits 'a warrantless search of a readily mobile vehicle when law enforcement has probable cause to believe the vehicle contains contraband or evidence of a crime.'" *Riojas*, 139 F.4th at 474 (quoting *Clayton*, 98 F.4th at 263). "A law enforcement officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Id.* (internal quotation marks omitted). Here, it is not clear that Jenkins' identification of Lewis' vehicle as being involved in a burglary some number of days before would cause a reasonable person to believe that the vehicle contained evidence of the burglary at the time it was searched, especially in the absence of information about the amount of time that had passed since the burglary of Jenkins' vehicle and the nature of any anticipated evidence of that burglary. So, Lewis states a claim for an unreasonable search of his

11

vehicle in violation of the Fourth Amendment.

### iii. Impound

"Impounding a vehicle qualifies as a seizure subject to a Fourth Amendment analysis." *Degenhardt v. Bintliff*, 117 F.4th 747, 756 (5th Cir. 2024). The "community caretaking exception" to the Fourth Amendment's warrant requirement allows police to "impound vehicles in furtherance of 'public safety' or 'community caretaking functions' such as removing 'disabled or damaged vehicles.'" *Id*. (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976)). "[T]he public caretaking exception to the warrant requirement allows police to impound [a] vehicle to protect the vehicle, its contents, and the surrounding roadways." *Trent v. Wade*, 776 F.3d 368, 387 n. 13 (5th Cir. 2015). Whether the community caretaking exception applies depends on "the reasonableness of the community caretaker impound viewed in the context of the facts and circumstances encountered by the officer." *Degenhardt*, 117 F.4th at 756 (internal quotation marks omitted) (quoting *United States v. McKinnon*, 681 F.3d 203, 207–08 (5th Cir. 2012)).

Here, Lewis alleges that his car was parked in front of a restaurant on private property. Doc. #1 at 6. He was the only occupant of the vehicle, so there was no one else available to take custody of the vehicle when he was transported to the station. Considering that the vehicle would have otherwise been left where it was parked when Lewis was taken to the station, the allegations in the complaint do not indicate it was unreasonable for Weatherspoon to determine that the vehicle should be impounded to protect the vehicle and the contents of the vehicle. *See United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1993) (impound of vehicle permissible to ensure it was not left "where it could have become a nuisance, and where it could have been damaged or stolen").

Lewis primarily challenges the choice of an officer driving his vehicle to the police station rather than his vehicle being towed. However, the Fifth Circuit has upheld impoundments when

12

officers drive the impounded vehicle. *See United States v. Fossler*, 597 F.2d 478, 482 (5th Cir. 1979) (vehicle driven to police station by officer was legitimately impounded); *United States v. Gallo*, 927 F.2d 815, 818 (5th Cir. 1991) (car was impounded and lawful inventory search conducted when officers decided to drive it to police station instead of towing to a storage lot); *United States v. Gravitt*, 484 F.2d 375, 378 (5th Cir. 1973) (no fourth amendment violation when officers drove arrestee's vehicle to police station). Because Weatherspoon could lawfully impound the vehicle, Lewis does not state a claim for an unlawful seizure of the vehicle just because he had an officer drive it to the station instead of towing it there.

### c. Illegal Search and Seizure of Cell Phone

Lewis' claims that Weatherspoon illegally seized and searched the contents of his cell phone are based on allegations that Weatherspoon searched the phone without consent and without a search warrant. Doc. #1 at 34. As described above, Lewis alleges that he gave Weatherspoon permission to "look through" his phone prior to his arrest but that Weatherspoon did not perform the warrantless search of the phone until several days later.

"The Supreme Court's standard for measuring the scope of a consent is one of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Gallegos-Espinal*, 970 F. 3d 586, 591 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991)). "We take account of any express or implied limitations or qualifications attending consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity." *Id*. (cleaned up) (quoting *United States v. Cotton*, 722 F. 3d 271, 275 (5th Cir. 2013)). "[W]hen a reasonable person consents to a search, he or she may understand that 'the search will be conducted forthwith and that only a single search will be made.'" *United States v. Escamilla*,

13

852 F.3d 474, 485 (5th Cir. 2017) (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.1(c) (5th ed. 2012)).

The Fifth Circuit held in *Escamilla* that when an officer searched a detainee's cell phone with consent prior to his arrest, then searched the phone a second time four hours later at the police station, the second search exceeded the scope of consent. *Id*. at 485. But when a suspect signed written consent to "complete" search of his phone, the later review of extracted data from the phone was within the scope of consent. *Gallegos-Espinal*, 970 F.3d 586, 593 (5th Cir. 2020).

Here, when Lewis gave Weatherspoon permission to "go through" his cell phone while he was detained in the back of the sheriff's vehicle, a reasonable person would not have understood this consent to extend to a search of the phone several days later. Although Lewis did not explicitly limit his consent, based on the exchange between Lewis and Weatherspoon and that Lewis was then only temporarily detained, it was implied that Weatherspoon was asking to search the phone then and there, not at the police station several days later. Because based on Lewis' allegations, the warrantless search of his phone exceeded the scope of his consent, Lewis states a § 1983 claim against Weatherspoon for the illegal search of his cell phone.

### d. Malicious Prosecution

Lewis' malicious prosecution claim is based on allegations of Weatherspoon initiating criminal charges against him with malice and without probable cause. Doc. #1 at 36–37.

> A party asserting a § 1983 malicious prosecution claim must prove an unlawful Fourth Amendment seizure and substantiate the following six elements: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Santander*, 133 F.4th 471, 482 (5th Cir. 2025) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023)). Lewis' complaint alleges that he was arrested and charged with the crimes of

14

auto burglary and credit card fraud, and that his arrest and prosecution resulted from Weatherspoon's affidavits of probable cause. Doc. #1 at 36–37. The complaint also alleges that the proceeding was terminated in Lewis' favor, because the charges against him were ultimately dismissed, and that Weatherspoon "instituted and commenced criminal charges with malice" and "used the criminal process to retaliate against [him]." *Id*. And Lewis alleges that he "suffered inconvenience, mental anguish, severe depression, emotional distress, and pain and suffering" because of the criminal charges and prosecution. *Id*. at 37–38. But "because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Armstrong*, 60 F.4th at 279 n. 15. Because, as discussed above, there was probable cause to charge Lewis with auto burglary, Lewis fails to state a claim for malicious prosecution.

### e. Deprivation of Property

Lewis bases his deprivation of property claim on his allegation that Weatherspoon stole $2,000.00 from the glove compartment of his vehicle. Doc. #1 at 38. "[D]eprivations of property caused by the misconduct of state officials do not infringe constitutional due process provided adequate state post-deprivation remedies exist." *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). "Mississippi permits a cause of action for recovery of property." *Lyle v. Dedeaux*, 39 F.3d 320, 1994 WL 612506 at *5 (5th Cir. Oct. 24, 1994) (citing MISS. CODE ANN. § 11-38-1). Because a state remedy exists, Lewis' deprivation of property claim is not properly brought as a § 1983 claim.

### 3. Negligence

In the "damages" section of his complaint, Lewis states, "Weatherspoon [is] liable for compensatory and exemplary damages arising from his negligence and gross negligence." Doc.

15

#1 at 39. To the extent Lewis intends to bring a separate claim for negligence, "acts of negligence are not cognizable under § 1983." *Carrothers v. Kelly*, 312 F. App'x 600, 603 (5th Cir. 2009). And, to the extent Lewis intends to assert such claims against Weatherspoon under Mississippi law, the Mississippi Tort Claims Act bars claims against police officers for negligent and grossly negligent conduct while engaged in the performance of their duties. MISS. CODE ANN. § 11-46-9(1)(c); *Philips v. City of Oxford*, 368 So. 3d 317, 323–24 (Miss. 2023).

### C. Relief

Lewis seeks $20,000,000.00 in punitive damages, $20,000,000.00 in compensatory damages, and "[i]njunctive and/ or declaratory relief that the acts and conduct set forth above were unconstitutional, and precluding [Weatherspoon] from engaging in such acts and conduct in the future." Doc. #1 at 40.

#### 1. Damages

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). "Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *J & J Sports Prods.*, 126 F. Supp. 3d at 814.

Throughout the complaint, Lewis alleges harm he suffered due to the constitutional violations, including that he "suffered financial and emotional harm, the loss of freedom and other damages;" and he "suffered severe depression, mental anguish, anxiety, and contemplated suicide." Doc. #1 at 11, 15. However, Lewis has offered no evidence of damages. In the absence of such evidence, the Court cannot award compensatory or punitive damages at this stage.

#### 2. Injunctive and declaratory relief

Lewis does not have standing to seek injunctive or declaratory relief. "In order to

demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). "To obtain declaratory relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id*. Here, Lewis alleges only past injury.

**V**
**<u>Conclusion</u>**

Lewis' motion for a default judgment [10] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED as to liability on Lewis' claims that Weatherspoon illegally searched his vehicle and the contents of his cell phone. The motion is DENIED in all other respects. The Court will set an evidentiary hearing on damages by separate notice.

**SO ORDERED**, this 30th day of March, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

17
